UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JENNIFER DEUEL,
on behalf of herself and
all others similarly situated,

        Plaintiff,                                Case No. 22-cv-1504

    v.

ILLUMINUS, *et. al.*

        Defendants

---

**BRIEF IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY SETTLEMENT APPROVAL**

---

Plaintiff, Jennifer Deuel, on behalf of herself and all others similarly situated, and Defendants, Illuminus and St. Elizabeth Manor, Inc., submit this Brief in Support of their Joint Motion for Preliminary Settlement Approval.

## <u>INTRODUCTION</u>

The parties' Settlement Agreement, titled "Settlement Agreement & Release," attached as Exhibit A to the parties' Joint Motion for Preliminary Settlement Approval, (ECF No. 29-1), is fair, reasonable, and adequate because it fully satisfies this Court's criteria for class and collective action settlements.

As such, the parties respectfully request that this Court grant the parties' Joint Motion for Preliminary Settlement Approval and issue an order effectuating the same.

## SETTLEMENT BACKGROUND

On December 14, 2022, Plaintiff filed her Complaint in this matter against Defendants, (ECF No. 1), alleging claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), and under Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq. ("WWPCL"), that Defendants failed to include all forms of non-discretionary compensation, such as monetary bonuses, shift differentials, incentives, awards, and/or other rewards and payments, in said employees' regular rates of pay for overtime calculation purposes, in violation of the FLSA and WWPCL. (ECF No. 1, ¶ 3; Declaration of Scott S. Luzi ("Luzi Decl."), ¶ 9.)

Shortly after the filing of the Complaint, counsel for the parties began directly discussing settlement. (Luzi Decl., ¶ 10; *see also* ECF Nos. 9, 12, 18, 20, and 24.) Even so, since the inception of the case, Defendants have denied, and continue to deny, engaging in any wage and hour violations, including but not limited to those allegations contained in the Complaint. Ultimately, though, the parties concluded that the prospect of resolution outweighed the continued time, effort, expense, and risk of litigation, including but not limited to extensive written discovery, depositions, document and data review and production, and the filing of conditional certification, certification, decertification, and dispositive motions. (Luzi Decl., ¶ 10.)

Specifically, between February 2023 and October 2023, counsel for the parties debated and analyzed their respective legal arguments and factual positions, and they communicated directly and engaged in substantive arms-length settlement negotiations with each other regarding legal authority relevant to Plaintiff's causes of action and Defendants' defenses. Defendants produced extensive class-wide data and documentation, including class-related payroll and timekeeping

records during the statutory period, and once Plaintiff's counsel received, reviewed, and exhaustively analyzed same, counsel for the parties created, exchanged, and reviewed damages models and monetary settlement calculations and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement. (Luzi Decl., ¶ 11.)

After the parties preliminarily agreed on settlement terms and conditions in early September 2023, counsel for the parties drafted and finalized a comprehensive settlement agreement, which was executed by the parties in late September 2023 and early October 2023. (Luzi Decl., ¶ 11.) Ultimately, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above. (*Id*.)

## THE SETTLEMENT AGREEMENT

The parties' Settlement Agreement is attached to the parties' Joint Motion for Preliminary Settlement Approval as Exhibit A. (ECF No. 29-1.)

The primary terms and conditions of the Settlement Agreement are summarized below.

### A.    The FLSA Collective

For settlement purposes, the FLSA collective is defined as: All individuals who worked as hourly-paid, non-exempt employees between December 14, 2019, and December 14, 2022, as identified in Exhibit B to the Settlement Agreement and who file a Consent to Join Form within thirty (30) days following service of the Notice Packet. (ECF No. 29-1, p. 1, ¶ B.) "Collective Members" are those individuals who file a Consent to Join Form within thirty (30) days following service of the Notice Packet. (*Id.* at ¶ 1.2.)

**B.    The Rule 23 Class**

For settlement purposes, the Rule 23 WWPCL class is defined as: All individuals who

worked as hourly-paid, non-exempt employees between December 14, 2020, and December 14,

2022, as identified in Exhibit B to the Settlement Agreement and who do not affirmatively opt-out

of the Settlement within thirty (30) calendar days following service of the Notice Packet. (*Id.* at ¶

1.1 (footnote omitted).)

**C.    Summary of Settlement Agreement's Terms**

*Payments to Class and Collective Members*

As settlement of this matter, Defendants have agreed to pay an amount not to exceed

$70,000.00. (ECF No. 29-1, ¶ 3.1(A).) After deducting Court-approved attorneys' fees and costs

to Plaintiff's counsel and a Court-approved Service Award to Plaintiff, the parties anticipate that

the Net Settlement Fund will total approximately $40,162.50. (*Id.* at ¶ 3.1(C) & Exhibit B; Luzi

Decl. ¶ 12.)

The parties anticipate that there are a total of approximately 62 Putative Class Members

and Putative Collective Members. (ECF No. 29-1, ¶ 3.1(C) & Exhibit B; Luzi Decl. ¶ 12.) A total

Net Settlement Fund of approximately $40,162.50 represents an excellent monetary recovery for

the Putative Class Members and Putative Collective Members in allegedly unpaid overtime wages

during the time period of December 14, 2019, and December 14, 2022, because the individual

amounts listed in Exhibit B to the Settlement Agreement for each Putative Class Member and

Putative Collective Member represent and approximate the actual dollar amounts of alleged unpaid

overtime wages that these individuals are owed for this period of time if Plaintiff's counsel proved

violations of the FLSA and WWPCL. (ECF No. 29-1, ¶ 3.1(C); Luzi Decl. ¶ 12.) A better result

for the Putative Class Members and Putative Collective Members via continued litigation under

the FLSA and WWPCL, as opposed to the monetary benefit from the parties' settlement, was unlikely. Thus, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate. (*Id.*)

Ultimately, Putative Class Members who do not exclude themselves, as set forth in the Settlement Agreement, will be paid their allocated share as stated in Exhibit B to the Settlement Agreement. (ECF No. 29-1, ¶ 3.1(C)1 & Exhibit B.) Likewise, Putative Collective Members who opt-in to the settlement, as set forth in the Settlement Agreement, will be paid their allocated share as stated in Exhibit B to the Settlement Agreement. (*Id.* at ¶ 3.1(C)2 & Exhibit B.) (Luzi Decl. ¶ 12.)

### *Notice of Settlement to Putative Collective and Putative Class Members*

Within five (5) business days after the Court's Preliminary Approval Order, Defendants' Counsel will provide Plaintiff's counsel with the names and last known addresses of the Putative Class Members and Putative Collective Members. (ECF No. 29-1, ¶ 2.2(B)1.) Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Plaintiff's counsel will mail the Notice Packet to the Putative Class Members and Putative Collective Members via U.S. First-Class mail. (*Id.* at ¶ 2.2(B)2.) If any Notice Packets are returned by the postal service as undeliverable, Plaintiff's counsel will make best efforts in locating the individual. (*Id.* at ¶ 2.2(B)3.)

### *Service Award to Named Plaintiff*

For services rendered to the Putative Class Members and Putative Collective Members as part of this case, Defendants have agreed to pay Named Plaintiff a Service Award in the amount of $5,000.00 from the Gross Settlement Amount. (ECF No. 29-1, ¶ 3.3.) Plaintiff's Counsel will

file a motion requesting that the Court approve the Service Award, which Defendants do not oppose and agree is reasonable. (*Id.*)

*Attorneys' Fees and Costs*

From the Gross Settlement Amount, Defendants have agreed to pay Plaintiff's counsel attorneys' fees and costs not to exceed $24,837.50. (ECF No. 29-1, ¶ 3.2.) Plaintiff's Counsel will file a Motion for Approval of Attorneys' Fees and Costs, which Defendants do not oppose and agree is reasonable. (*Id.*)

*Release of Claims*

Release By Collective Members: Upon the Court entering a Final Order Approving Settlement, and in exchange for the monetary consideration recited in the Settlement Agreement, Named Plaintiff agrees to dismiss the FLSA Claims with prejudice, and each Collective Member, including Named Plaintiff, will release the Releasees from: any and all wage and hour claims that accrued while employed at Defendants as an hourly paid, non-exempt employee, relating back to the full extent of the applicable statute of limitations and continuing through the date of the Preliminary Approval Order, including, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to the FLSA. (ECF 29-1, ¶ 4.1.)

Release By Class Members: Upon the Court entering a Final Order Approving Settlement, and in exchange for the monetary consideration recited in the Settlement Agreement, Named Plaintiff agrees to dismiss the WWPCL Claims with prejudice, and each Class Member, including Named Plaintiff, will release the Releasees from: any and all wage and hour claims that accrued while employed at Defendants as an hourly paid, non-exempt employee, relating back to the full

extent of the applicable statute of limitations and continuing through the date of the Preliminary Approval Order, including, all state claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to the WWPCL. (ECF 29-1, ¶ 4.2.)

Release By Named Plaintiff: Upon the Court entering a Final Order Approving Settlement, and in exchange for the Service Award recited in the Settlement Agreement, Named Plaintiff and her respective predecessors, successors, heirs and assigns, in addition to her legal representatives, completely releases and discharges Releasees from any and all known or unknown claims, which are releasable by law, of any kind which arise out of or are in any manner based upon or related to the employment relationship between her and Defendants and relating back to the full extent of the applicable statute of limitations and continuing through the date of the Final Order. Named Plaintiff's release of claims against Releasees, includes but is not limited to: (1) claims pursuant to the FLSA; (2) claims pursuant to the WWPCL; (3) any state common law wage claims, including, but not limited to, breach of contract (whether express or implied), promissory estoppel, unjust enrichment and quantum merit; (4) Title VII of the Civil Rights Act of 1964, as amended; (5) Section 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981); (6) the Genetic Information Nondiscrimination Act; (7) the Americans with Disabilities Act, as amended; (8) the Equal Pay Act; (9) the National Labor Relations Act; (10) the Employee Retirement Income Security Act of 1974; (11) the Wisconsin Fair Employment Act; (12) the Wisconsin Business Closing law; (13) state or federal parental, family and medical leave acts; (14) the Uniformed Services Employment and Reemployment Rights Act (USERRA), or any other local, state, or federal military and/or veterans rights act, or any other claim based on veteran status; (15) claims arising under any other

local, state or federal statute, ordinance, regulation or order, or which involve a claim or action for

wrongful discharge, defamation, misrepresentation, violation of public policy, invasion of privacy,

emotional distress, breach of contract (express or implied) and/or any other tort or common law

cause of action; and (16) any other federal, state or local law, statute or ordinance affecting the

Named Plaintiff's employment with or termination from Defendants. (ECF 29-1, ¶ 4.3.)

## ARGUMENT

## I. PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE

Resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191,

1996 (7th Cir. 1996). The standards for approval of the settlement of FLSA collective actions

"track the considerations that the court must weigh for reviewing proposed class action settlements

under Rule 23." *Smoot v. Wieser Bros. Gen. Contractors, Inc*., 2016 WL 1736498, at *6 (W.D.

Wis. Apr. 29, 2016).

Under the FLSA, employees can bargain, waive, or modify their rights if the court approves

of the parties' settlement as a fair and reasonable resolution of a bona fide dispute over alleged

violations of the FLSA, and the Court then enters the settlement as a stipulated judgment. *Lynn's

Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). An FLSA settlement

requires court approval to be valid and enforceable. *Walton v. United Consumers Club, Inc*., 786

F.2d 303, 306 (7th Cir. 1986).

For the WWPCL claims, a class action settlement may be approved under Fed. R. Civ. P.

23 if: (1) the individual class members are afforded an opportunity to request exclusion from the

settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair,

reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must weigh

the probabilities of victory or defeat as indicated by the legal or factual situation presented and

determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.,* 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

The Seventh Circuit considers the following factors when determining whether a proposed class action settlement is fair, adequate, and reasonable: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd sub nom. California Pub. Employees' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999)).

Ultimately, at the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" so as to warrant sending notice to class members and proceeding with a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

Here, the parties' Settlement Agreement satisfies all of the requirements and factors articulated above and is therefore appropriate for preliminary approval.

## A.    The Strength of the Case Vis-à-Vis the Settlement Amount

The first settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.* 463 F.3d 646, 653 (7th Cir. 2006). In this case, the parties have thoroughly investigated and analyzed Plaintiff's claims against Defendants under the FLSA and WWPCL, and while the parties nonetheless maintained a strong belief in their respective legal and factual positions and on the possibility of class and collective certification (and/or de-certification), they recognized that the

prospect of expeditious resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including depositions and extensive document review and production. The time and expense associated with discovery, briefing, and hearings on collective and class certification alone would have been substantial, further supporting the parties' decision to enter into settlement negotiations, resulting in the parties' Settlement Agreement. (Luzi Decl., ¶¶ 10-11.)

In order to fully and finally resolve this matter, Defendants have agreed to monetary compensation for Plaintiff and the Settlement Class members that fairly and adequately represent the alleged overtime wages actually owed to them. Specifically, the parties anticipate that a total of approximately 62 Putative Class Members and Putative Collective Members will theoretically participate in the Net Settlement Fund, totaling approximately $40,162.50. (ECF No. 29-1, ¶ 3.1(C) & Exhibit B; Luzi Decl. ¶ 12.) Each Putative Class Member who does not affirmatively opt-out of the parties' settlement – and each Collective Member who affirmatively opts-in to the settlement – as set forth in the Settlement Agreement, will be paid their allocated share of reasonably approximated and alleged overtime wages owed during the statutory period. (*Id.*)

Thus, the overall balance supports approval of the Settlement Agreement.

### B.     The Complexity, Length, and Expense of Litigation

The complexity, expense, and length of continued litigation weigh in favor of approving this Settlement Agreement. As mentioned above, both parties acknowledge the continued time, effort, expense, and risk of litigation, including extensive document review and production and depositions. Litigation of this matter through conditional certification, final certification and/or de-certification, dispositive motions, and ultimately trial would have required considerable time, effort, and expense for both sides. (Luzi Decl., ¶¶ 10-11.) With this in mind, from all parties' perspective, settlement is favored.

### C. The Absence of Fraud or Collusion in the Settlement

This case involves a bona fide dispute over whether Defendants violated the FLSA and WWPCL as alleged by Plaintiff. The ultimate resolution, embodied in the Settlement Agreement, was the result of months of arms-length negotiations between counsel for the parties between February 2023 and October 2023. (Luzi Decl., ¶¶ 10-11.) Given these considerations, it is clear that there was no fraud or collusion. The settlement will provide Plaintiff and the Settlement Class members with a fair recovery while eliminating the risks and costs both sides would bear if this litigation continued to a resolution on the merits.

### D. The Lack of Opposition to the Settlement

The parties are unaware of any opposition to the settlement at this time. (Luzi Decl., ¶ 14.)

### E. Counsel's Opinion

Counsel for the parties support the settlement. (Luzi Decl., ¶¶ 10-12.) As experienced practitioners in the area of wage and hour class and collective actions, counsel for the parties recognized the uncertainty of proceeding through dispositive motions and trial, and they have sought a fair and equitable compromise to resolve this matter. Despite their divergent views regarding Plaintiff's allegations, counsel for the parties engaged in arms-length negotiations from between February 2023 and October 2023 and ultimately reached a settlement embodied in the Agreement that they consider to be fair, reasonable, and adequate given all the considerations above. (*Id.*)

### F. The Amount of Discovery and Stage of Proceedings

Between February 2023 and October 2023, counsel for the parties debated and analyzed their respective legal arguments and factual positions, and they communicated directly and engaged in substantive arms-length settlement negotiations with each other regarding legal authority relevant to Plaintiff's causes of action and Defendants' defenses. Defendants produced relevant and

extensive class-wide data and documentation, including class-related payroll and timekeeping records during the statutory period, and once Plaintiff's counsel received, reviewed, and exhaustively analyzed same, counsel for the parties created, exchanged, and reviewed damages models and monetary settlement calculations and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement. After the parties preliminarily agreed on settlement terms and conditions, counsel for the parties worked together to draft and finalize the settlement agreement. (Luzi Decl., ¶¶ 10-11.)

Over the course of the case, the parties had ample time and information to evaluate the risks of continued litigation vis-à-vis settlement. Additional discovery proceedings would not have helped to materially crystallize the parties' positions any further, and a better result for the Putative Class Members and Putative Collective Members via continued litigation under the FLSA and WWPCL as opposed to the monetary benefit from the parties' settlement was unlikely. Ultimately, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above. (*Id*.)

## II.  FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED CLASS SHOULD BE CERTIFIED

Rule 23(a) requires that, in order for a class to be certified, the following elements must be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In this case, all four elements of Rule 23(a) are met.

Additionally, Plaintiff must satisfy one of the elements of Rule 23(b). Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and

efficient adjudication. In this case, the elements of Rule 23(b)(3) are met.

### A. The Numerosity Requirement of Rule 23(a)(1)

The numerosity requirement of Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-4 (7th Cir. 2004). While there is no explicit cut-off for numerosity, the Seventh Circuit has found classes of forty (40) individuals sufficient. *See, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969).

This case meets the numerosity requirement of Rule 23(a)(1) because there are approximately 62 Putative Class and Putative Collective Members. (ECF No. 29-1, ¶ 3.1(C).)

### B. The Commonality Requirement of Rule 23(a)(2)

Rule 23(a)(2) requires that class members share a common question of law or fact. This element is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Suchanek v. Sturm Foods*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.")); *Williams-Green v. J. Alexander's Rests., Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims…arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

This case meets the requirement of Rule 23(a)(2) because Plaintiff and the Putative Class members and Putative Collective members have identical wage-and-hour claims arising under the

same statutes—the FLSA and WWPCL—based upon similar allegedly unlawful pay practices applicable to the Class as a whole. (ECF No. 1, ¶ 3.)

### C.    The Typicality Requirement of Rule 23(a)(3)

The typicality requirement of Rule 23(a)(3) is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The Seventh Circuit has held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citations and internal quotation marks omitted); *see also De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Stated another way, the class representative's claims must have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Further, typicality element of Rule 23(a)(3) focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

In this case, Plaintiff is a member of the Putative Class and Putative Collective that she seeks to represent, and the legal theories advanced by Plaintiff, (*see* ECF No. 1, ¶ 3), apply equally to her and the Putative Class and Putative Collective Members. Because Plaintiff's claims involve the same legal theories and arise from the same alleged course of conduct that gives rise to the claims of the Settlement Class members, the Rule 23(a)(3) typicality element has been satisfied.

### D.    The Adequacy of Representation Requirement of Rule 23(a)(4)

The adequacy of representation element under Rule 23(a)(4) consists of two parts: (1) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Eubank v.*

*Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013).

In this case, both considerations are met because Plaintiff and Plaintiff's counsel will provide fair and adequate protection for the interests of the Class and Collective as required by Rule 23(a)(4). Plaintiff understands the obligations of a class representative, and Plaintiff's counsel is experienced with complex federal wage and hour litigation by virtue of successfully representing numerous individuals in single-Plaintiff and multi-Plaintiff wage and hour actions. (Luzi Decl., ¶¶ 2-7.) Plaintiff also has no interests antagonistic to those of the Class and Collective. Plaintiff seeks, on behalf of herself and the Putative Class and Putative Collective Members, monetary damages pursuant to the FLSA and WWPCL as a result of Defendants' alleged unlawful pay practices. Given the identity of claims, there is neither the potential for conflicting interests nor any antagonism between the interests of Plaintiff and the Putative Class and Putative Collective Members.

### E.     The Predominance Requirement of Rule 23(b)(3)

Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. Of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015) ("Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense."). To make this determination, the Court must consider the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in

managing a class action. Rule 23(b)(3)(A)-(D).

The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Put differently, is the putative class sufficiently cohesive to warrant adjudication by representation? *See, e.g., Blihovde*, 219 F.R.D. at 620 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In this case, and while the Putative Class and Putative Collective Members may have a theoretical interest in controlling their own legal claims, they also have an interest in resolving their claims efficiently. The proposed Settlement Agreement provides that efficiency. Indeed, the Seventh Circuit has held that a class action is an efficient and effective way to obtain relief for individual class members. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Further, when challenging a uniform policy, as Plaintiff challenges Defendants' uniform compensation policies and practices in this case, the validity of those policies predominate over individual issues and class certification is appropriate. *Id*. (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 147 n. 20 (1982)). Individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id*.

The Settlement Agreement resolves the parties' dispute(s) regarding Defendants' allegedly unlawful compensation policies and practices regarding compensating Putative Class and Putative Collective Members for all work performed each workday and each workweek at an overtime rate of pay. Because Plaintiff has alleged that these compensation policies and practices were uniformly applied to all Putative Class and Putative Collective Members in the State of Wisconsin, and

because the parties' Settlement Agreement resolves their disputes over these practices, common issues predominate in this matter, and this element under Rule 23(b)(3) is met.

### F.    The Superiority Requirement of Rule 23(b)(3)

The superiority requirement under Rule 23(b)(3) requires Courts to consider: (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class.

In this case, there is no other related litigation pending, (Luzi Decl., ¶ 14), consolidating all the claims before this Court is efficient and desirable, and there will be no difficulties in managing this class action in light of the parties' settlement. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Finally, a class is the superior method for resolving this case because there is no prejudice to any Putative Class and Putative Collective Member: any member who prefers to litigate his or her legal claim(s) separately may opt out of the Class (or not opt in to the Collective) during the Notice period. Class resolution is desirable in this case given the size of the Class and Collective and the nature of the alleged violations. Defendants' challenged compensation policies allegedly harmed each Putative Class and Putative Collective Member, but said members' individual interests in prosecuting these claims is limited by the relatively small monetary value of each individual claim, which also makes adjudication of individual claims inefficient and unlikely. Even so, to the extent that any Putative Class and Putative Collective Member prefers to litigate his or her legal claim(s) separately, the Class notice mechanism provides him or her the opportunity to

do so.

## III. FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED COLLECTIVE SHOULD BE CERTIFIED

Courts have held that, where a Plaintiff satisfies Rule 23 standards for class certification, that Plaintiff also satisfies the standards for certification of a FLSA collective action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.") (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)).

Accordingly, for settlement purposes only, the parties request that this Court certify an FLSA collective on behalf of the Settlement Class.

## IV. THE PARTIES' NOTICE PLAN

Within five (5) business days after the Court's Preliminary Approval Order, Defendants' Counsel will provide Plaintiff's counsel with the names and last known addresses of the Putative Class and Putative Collective Members, (ECF No. 29-1, ¶ 2.2(B)1.) Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Plaintiff's counsel will mail the Notice Packet to the Putative Class and Putative Collective Members via U.S. First-Class mail. (*Id.* at ¶ 2.2(B)2.) If any Notice Packets are returned by the postal service as undeliverable Plaintiff's counsel will make best efforts in locating the individual. (*Id.* at ¶ 2.2(B)3.)

## V.    THE PARTIES' PROPOSED NOTICE PACKET AND MANNER OF DELIVERY ARE APPROPRIATE

In order to protect the rights of absent members of a Rule 23 class, the Court must provide the best notice practicable of the settlement to all class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The Seventh Circuit has found that notice satisfies Rule 23 due process, and binds all members of the class, if it: (1) describes the essential terms of the settlement; (2) discloses any special benefits or incentives to the class representatives; (3) provides information regarding attorneys' fees; (4) indicates the time and place of the hearing to consider approval of the settlement and the method for objecting to and/or opting out of the settlement; (5) explains the procedures for allocating and distributing settlement funds; and (6) prominently displays the address of class counsel and the procedure for making inquiries. *See, e.g., Airline Stewards and Stewardesses Ass'n 550 v. Am. Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (holding that due process was satisfied by notice that explained the status of proceedings, significance of judicial approval of settlement, and opportunity to object at the hearing)). Likewise, "notice of FLSA claims must give potential class members enough information to make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, the parties' notice plan provides for Plaintiff's counsel to distribute the Notice Packet via first-class U.S. Mail, which is attached to the Settlement Agreement as Exhibit A, to all Putative Class and Putative Collective Members. The contents of the Notice Packet meet all of the six criteria set forth above, clearly identifying the options available to Putative Class and Putative Collective Members and comprehensively explaining the nature and mechanics of the settlement.

The proposed manner of delivery of the Notice Packet is also sufficient. The Notice will be sent via first-class U.S. Mail to all Putative Class and Putative Collective Members. If any Notice Packet is returned to the Settlement Administrator as undeliverable, Plaintiff's counsel will

take other appropriate steps to identify and mail the Notice to an alternative address for the Putative Class and Putative Collective Member. (ECF No. 29-1, ¶ 2.2(B)(3).) *See, e.g., Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir. 1985); *Eisen*, 417 U.S. at 177 ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive the 'best notice practicable under the circumstances.'").

Accordingly, the parties' Notice Packet, which is attached to the Settlement Agreement as Exhibit A, as well as the manner of delivery to all Putative Class and Putative Collective Members, complies with Rule 23 and due process, and the Notice Packet should be approved by this Court.

## VI. PLAINTIFF'S SERVICE AWARD

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In this case and prior to the Fairness Hearing, Plaintiff will file a motion asking the Court to approve a Service Award of $5,000.00 for the services she rendered to the Putative Class and Putative Collective Members as part of this case. (ECF No. 29-1, ¶ 3.3; Luzi Decl. ¶ 13.) Defendants do not oppose Plaintiff's Service Award and agree that it is reasonable. (*Id.*) Plaintiff's Service Award in the amount of $5,000.00 is, in fact, reasonable, in line with, and similar to other service awards approved by this District in multi-plaintiff FLSA collective cases that have resolved for monetary amounts similar to the total monetary settlement in this case. *See, e.g., Schneider v. Copperleaf Management Group, Inc.*, Case No. 22-cv-1161, ECF No. 43 (E.D. Wis. June 28,

2023) (Ludwig, J.); *Malone v. Interflex Acquisition Company,* Case No. 22-cv-99, ECF No. 42 (E.D. Wis. Feb. 21, 2023) (Griesbach, J.); *Rankins v. Copperleaf Management Group, Inc.,* Case No. 22-cv-299, ECF No. 33 (E.D. Wis. Dec. 19, 2022) (Ludwig, J.); *Bracher v. Jaybird Senior Living, LLC, et al.,* Case No. 21-cv-0889, ECF No. 44 (E.D. Wis. Dec. 16, 2022) (Ludwig, J.); *Wallace v. Tri-City Glass & Door, Inc.*, Case No. 21-cv-490, ECF No. 58 (E.D. Wis. November 21, 2022) (Griesbach, J.); *Magalhaes, et. al. v. ProAmpac Intermediate, Inc., et. al.*, Case No. 20-cv-1333, ECF No. 53 (E.D. Wis. November 18, 2022) (Griesbach, J.); *Espinoza v. Aqua Finance, Inc.*, Case No. 21-cv-1484, ECF No. 38 (E.D. Wis. November 10, 2022) (Griesbach, J.); *Espegard v. SD Wheel Corp.,* Case No. 21-cv-849, ECF No. 35 (E.D. Wis. October 11, 2022) (Griesbach, J.); *Vasquez-Alvarez v. CB Healthcare Management, LLC,* Case No. 21-cv-0949, ECF No. 37 (Sept. 27, 2022) (Griesbach, J.); *Sorenson v. The Rennes Group, Inc., et. al.,* Case No. 21-cv-920, ECF No. 45 (E.D. Wis. September 20, 2022) (Griesbach, J.); *Todd v. AA Healthcare Management LLC, et. al.*, Case No. 20-cv-1744, ECF No. 58 (E.D. Wis. August 5, 2022) (Ludwig, J.); *Myles, et. al. v. Wellpath LLC*, Case No. 20-cv-1498, ECF No. 48 (E.D. Wis. July 11, 2022) (Dries, J.); *Thames v. Steele Solutions, Inc.*, Case No. 21-cv-664, ECF No. 41 (E.D. Wis. July 11, 2022) (Dries, J.); *Sato v. Puratos Corporation*, Case No. 12-cv-173, ECF No. 34 (E.D. Wis. March 25, 2022) (Stadtmueller, J.); *Harrison v. Sunny Ridge Nursing and Rehabilitation Center, LLC*, 20-cv-197, ECF No. 51 (E.D. Wis. March 16, 2022) (Pepper, J.); *Gillison v. Hunter Douglas Fabrication Company,* Case No. 21-cv-389, ECF No. 30 (E.D. Wis. March 3, 2022) (Griesbach, J.); *Wilkerson v. Laser, LLC,* Case No. 20-cv-1739, ECF No. 43 (E.D. Wis. January 28, 2022) (Griesbach, J.); *Wright v. Denali Staffing, LLC,* 20-cv-1185, ECF No. 39 (E.D. Wis., December 10, 2021) (Adelman, J.); *Trautman  v. Midwest Composite Technologies*, *LLC*, Case No. 21-cv-43, ECF No. 140 (E.D. Wis. November 15, 2021) (Dries, J.); *Imes v. Amalga Composites, Inc.,*

19-cv-1130, ECF No. 40 (E.D. Wis., September 21, 2021) (Adelman, J.); *Mitchell v. Trilliant Food and Nutrition*, *LLC*, Case No. 19-cv-147, ECF No. 185 (E.D. Wis. September 2, 2021) (Griesbach, J.); *Cooper v. OS Restaurant Services, LLC, et. al.*, Case No. 20-cv-240, ECF No. 57 (E.D. Wis. June 9, 2021) (Adelman, J.); *Aguilar v. Bel Brands USA, Inc.,* Case No. 20-cv-759, ECF No. 35 (E.D. Wis. April 29, 2021) (Griesbach, J); *Stirmel v. S&C Electric Company,* 20-cv-347, ECF No. 44 (E.D. Wis. March 5, 2021) (Adelman, L.); *Yegger v. TRN Milwaukee*, Case No. 20-cv-144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, L.).

Prior to the Fairness Hearing, Plaintiff's counsel will Motion this Court for approval of Plaintiff's Service Award in the amount of $5,000.00.

## VII.   PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND COSTS

Attorneys' fees and costs are recoverable under the FLSA, 29 U.S.C. § 216(b), and under the WWPCL, Wis. Stat. §109.03(6). The Seventh Circuit utilizes "common fund principles [to] properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994). Indeed, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Id.* at 563.

The Seventh Circuit utilizes a "market-based approach" to setting the percentage of a settlement fund to be awarded as reasonable attorneys' fees. *See, e.g., Silverman v. Motoroloa Sols, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (finding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). In applying this standard, a court is not required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." *In re Synthroid*

*Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Ultimately: "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986).

In keeping with this approach, federal courts, including the federal Districts in this State, have repeatedly approved attorneys' fees in the amount of one-third (33.33%) of the common settlement fund in collective cases under the FLSA and class cases under the WWPCL, in addition to reimbursement of reasonable costs expended in the litigation, because such amounts are fair and reasonable, consistent with the market rate (in Wisconsin) for representation of plaintiffs in collective and class litigation under the FLSA and the WWPCL, respectively, and consistent with Plaintiff's counsel's agreement with Plaintiff. (Luzi Decl., ¶¶ 13.) *See, e.g., Ciha v. Masters Gallery Foods Incorporated*, Case No. 21-cv-1405, ECF No. 39 (E.D. Wis. October 30, 2023) (Dries, J.) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Kolbow v. API Heat Transfer, et. al.*, Case No. 22-cv-451, ECF No. 40 (E.D. Wis. September 21, 2023) (Stadtmueller, J.) (same); *Solem v. McCain Foods USA, Inc.*, Case No. 22-cv-137, ECF No. 50 (E.D. Wis. August 18, 2023) (Griesbach, J.) (same); *Newman v. Luvata Appleton, LLC*, Case No. 22-cv-942, ECF No. 39 (E.D. Wis. August 7, 2023) (Griesbach, J.) (same); *Alcione v. Schuette, Inc.*, Case No. 22-cv-1514, ECF No. 44 (E.D. Wis. July 26, 2023) (Griesbach, J.) (same); *Christoph v. Schwabe North America, Inc.*, Case No. 22-cv-975, ECF No. 46 (E.D. Wis. June 28, 2023) (Griesbach, J.) (same); *Terry v. Mandel Property Services, Inc.*, Case No. 21-cv-1220, ECF No. 38 (E.D. Wis. June 26, 2023) (Stadtmueller, J.) (same); *Wallace v. Tri-City Glass & Door, Inc.*, Case No. 21-cv-490, ECF No. 58 (E.D. Wis. November 21, 2022) (Griesbach, J.) (same); *Magalhaes, et. al. v. ProAmpac Intermediate, Inc., et. al.*, Case No. 20-cv-1333, ECF No. 53 (E.D. Wis. November 18, 2022) (Griesbach, J.) (same); *Espegard v. SD Wheel Corp.,* Case No. 21-cv-

849, ECF No. 35 (E.D. Wis. October 11, 2022) (Griesbach, J.) (same); *Sorenson v. The Rennes Group, Inc., et. al.,* Case No. 21-cv-920, ECF No. 45 (E.D. Wis. September 20, 2022) (Griesbach, J.) (same); *Todd v. AA Healthcare Management LLC, et. al.*, Case No. 20-cv-1744, ECF No. 58 (E.D. Wis. August 5, 2022) (Ludwig, J.) (same); *Myles, et. al. v. Wellpath LLC*, Case No. 20-cv-1498, ECF No. 48 (E.D. Wis. July 11, 2022) (Dries, J.) (same); *Thames v. Steele Solutions, Inc.*, Case No. 21-cv-664, ECF No. 41 (E.D. Wis. July 11, 2022) (Dries, J.) (same); *Sato v. Puratos Corporation*, Case No. 12-cv-173, ECF No. 34 (E.D. Wis. March 25, 2022) (Stadtmueller, J.) (same); *Trautman v. Midwest Composite Technologies*, *LLC*, Case No. 21-cv-43, ECF No. 140 (E.D. Wis. November 15, 2021) (Dries, J.) (same); *Mitchell v. Trilliant Food and Nutrition*, *LLC*, Case No. 19-cv-147, ECF No. 185 (E.D. Wis. September 2, 2021) (Griesbach, J.) (same); *Cooper v. OS Restaurant Services, LLC, et. al.*, Case No. 20-cv-240, ECF No. 57 (E.D. Wis. June 9, 2021) (Adelman, J.) (same); *Aguilar v. Bel Brands USA, Inc.,* Case No. 20-cv-759, ECF No. 35 (E.D. Wis. April 29, 2021) (Griesbach, J.) (same); *Stirmel v. S&C Electric Company,* 20-cv-347, ECF No. 44 (E.D. Wis. March 5, 2021) (Adelman, J.) (same); *Benoskie v. Kerry Foods, Inc.*, Case No. 19-cv-684, ECF No. 22 (E.D. Wis. September 28, 2020) (Pepper, J.) (same); *Yegger v. TRN Milwaukee*, Case No. 20-cv-144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, J.) (same); *Winter v. U.S. Paper Mills Corp., et. al.*, Case No. 19-cv-657, ECF No. 41 (E.D. Wis. May 7, 2020) (Griesbach, J.) (same); *Melzer v. Pro Label, Inc.*, Case No. 18-cv-1080, ECF No. 37 (E.D. Wis. January 23, 2020) (Griesbach, J.) (same); *Lee v. UL LLC,* Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (Griesbach, J.) (same); *Ehmann v. Pierce Mfg., Inc.,* 16-cv-247-WCG, ECF Nos. 143, 151 (Griesbach, J.) (same); *Frank v. Gold Cross Ambulance Serv., Inc.*, 13-cv-1149-WCG, ECF Nos. 24, 31 (Griesbach, J.) (same).

In this case and prior to the Fairness Hearing, Plaintiff's counsel will Motion this Court for approval of attorneys' fees and costs in the total amount of $24,837.50, which consists of attorneys' fees of $23,333.31, or 1/3 of the Gross Settlement Amount, and reimbursement of reasonable and actual case-related costs and administration expenses not to exceed $1,504.19. (ECF No. 29-1, ¶ 3.2; Luzi Decl., ¶ 13.) Defendants do not oppose this request and agree that it is reasonable. (*Id.*)

## **CONCLUSION**

For all of the reasons herein, the parties respectfully request that this Court:

1. Approve the parties' Settlement Agreement, (ECF No. 29-1), as a fair, reasonable, and adequate resolution of a bona fide dispute under the FLSA and the WWPCL;

2. Certify the WWPCL Class as a class action under FED.R.CIV.P. 23 for the purpose of settlement only;

3. Certify the FLSA Collective as a collective action under 29 U.S.C. § 216(b) for the purpose of settlement only;

4. Appoint Named Plaintiff, Jennifer Deuel, as the Class Representative and Collective Representative;

5. Appoint Walcheske & Luzi, LLC as Class Counsel pursuant to FED.R.CIV.P. 23(g) and Collective Counsel pursuant to 29 U.S.C. § 216(b);

6. Approve the Notice Packet in the form of Exhibit A to the parties' Settlement Agreement for distribution to all Putative Collective Members and Putative Class Members;

7. Order that the Notice Packet to be sent to all Putative Collective Members and Putative Class Members constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to Putative Collective Members and Putative Class Members in full compliance with the requirements of applicable law, including the Due Process clause of the United States Constitution;

8. Order that each Putative Collective Member who wishes to be included in the FLSA Collective must opt-in per the instructions set forth in the Notice Packet and that their response must be postmarked within thirty (30) days of mailing of the Notice Packet;

9. Order that any Putative Collective Member who has properly and timely opted-in to the FLSA Collective and filed a Consent to Join form with this Court shall be bound by this Agreement when the Court issues a Final Order;

10. Order that each Putative Class Member who wishes to be excluded from the WWPCL Class must opt-out per the instructions set forth in the Notice Packet and that their response must be postmarked within thirty (30) days of mailing of the Notice Packet;

11. Order that any Putative Class Member who has not properly and timely requested exclusion from the WWPCL Class shall be bound by this Agreement when the Court issues a Final Order;

12. Schedule a Fairness Hearing in approximately 75 days;

13. Order that any Motions, including but not limited to a Motion for Approval of Attorneys' Fees and Costs, a Motion for Approval of Named Plaintiff's Service Award, and a Joint Motion for Final Settlement Approval, must be filed with the Court no later than seven (7) days prior to the Fairness Hearing; and

14. Order that any Putative Collective Member or Putative Class Member who wishes to object in any way to this Agreement must file and serve such written objections per the instructions set forth in the Notice Packet, which must be postmarked no later than thirty (30) days after the mailing of the Notice Packet, together with copies of all papers in support of his or her position. The Notice Packet shall state that the Court will not consider objections of any Putative Collective Member or Putative Class Member who has not properly served copies of his or her objections on a timely basis.

Dated this 2nd day of November, 2023

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

*s/ Scott S. Luzi*
Scott S. Luzi, SBN. 1067405
WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
E-Mail: sluzi@walcheskeluzi.com

VON BRIESEN & ROPER, s.c.
Counsel for Defendants

*s/ Craig T. Papka*
Craig T. Papka, SBN 1093078
VON BRIESEN & ROPER, s.c.
20975 Swenson Drive, Suite 400
Waukesha, Wisconsin 53186
Telephone: (262) 923-8672
E-Mail: Craig.Papka@vonbriesen.com